**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NANCY W.,[1]

       Plaintiff,

v.

**KILOLO KIJAKAZI, Acting**
**Commissioner of Social Security,**[2]

       Defendant.

Civil Action No.
20-cv-2505-MAU

**MEMORANDUM OPINION**

Plaintiff Nancy W. ("Plaintiff") filed this action seeking to reverse the final decision of the

Acting Commissioner of Social Security, Dr. Kilolo Kijakazi ("Defendant" or "Commissioner"),

denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g),

1383(c)(3).  Plaintiff seeks judgment for entry of benefits or, in the alternative, remand for further

proceedings.  The Commissioner argues that the Administrative Law Judge's ("ALJ") decision

should be affirmed as it is based on substantial evidence.

Having reviewed the Administrative Record, the Parties' briefs, and the relevant law, this

Court will **GRANT IN PART** and **DENY IN PART** the Parties' motions (ECF Nos. 13 and 14)

---

[1]    Plaintiff's name has been partially redacted in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-ap-c-suggestion_cacm_0.pdf (last visited July 27, 2023).

[2]    Pursuant to Federal Rule of Civil Procedure 25(d), the current Defendant has been substituted for her predecessor.  *See* Fed. R. Civ. P. 25(d).

and remand this case to the Social Security Administration for further proceedings consistent with this Memorandum Opinion.

## BACKGROUND

### A. THE SOCIAL SECURITY ACT

To qualify for disability insurance and/or supplemental security income benefits under the Act, the Commissioner must find that the claimant has a "disability" as defined in the statute. *See* 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process for assessing a claimant's alleged disability, with the claimant carrying the burden of proof for establishing her inability to work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). At the first three steps, the claimant must prove that: (1) she is not "presently engaged in substantial gainful activity"; (2) she has a "medically severe impairment or impairments"; and (3) her impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2017) ("the Listings") (setting forth various physical and mental conditions—categorized by the body system they affect—that are automatically presumed severe enough to preclude a claimant's gainful employment); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) ("[I]f an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work.").

If the claimant cannot satisfy the third step, the inquiry proceeds to steps four and five, "following an assessment of the claimant's residual functional capacity RFC ["Residual Functional Capacity"]." *Hall v. Kijakazi*, No. 20-cv-2073, 2022 WL 343505, at *2 (D.D.C. Feb. 4, 2022) (citing 20 C.F.R. § 416.920(e)). The RFC is "what an individual can still do despite his or her limitations." SSR 96-8p, 1996 WL 374184, at *2. It requires an assessment of "the extent to which an individual's medically determinable impairment(s), including any related symptoms . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* The RFC reflects an individual's "*maximum remaining ability to do sustained work activities.*" *Id.* (emphasis in original).

At step four, the claimant must show that her impairment(s) prevent her from performing her past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step five, the burden shifts to the Commissioner to identify specific jobs available in the national economy that the claimant can perform in light of her age, education, work experience, and RFC. *See id.*; *see also Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011). In making this determination, the ALJ may call upon a vocational expert to testify at the administrative hearing as to whether a claimant can perform other work that exists in the national economy. *Id.* at 90.

## B. PLAINTIFF'S DISABILITY CLAIMS AND PROCEDURAL HISTORY

Plaintiff was born on March 6, 1958. ECF No. 8-3 at 2. Plaintiff's highest level of education is a bachelor's degree. ECF No. 8-2 at 37. She held several jobs from 2006 through 2014, including as a teacher, sales clerk, instructor, and manager. ECF No. 8-3 at 9. At the time of the administrative hearing, Plaintiff lived with her mother and served as her mother's primary caretaker. ECF No. 8-2 at 14-15.

On June 20, 2017, Plaintiff filed applications for DIB and SSI benefits, in which she alleged that her disability began on April 6, 2015. *Id.* at 11.  Plaintiff's claims were based on her physical impairments, including spinal pain, arthritis, and hypertension.  ECF No. 8-3 at 12-13.  The Commissioner denied Plaintiff's claims on October 26, 2017, and again upon reconsideration on February 1, 2018.  ECF No. 8-2 at 11.  On March 4, 2018, Plaintiff filed a written request for a hearing, which the ALJ held on July 24, 2019.  *Id.*

### C.  THE ADMINISTRATIVE HEARING

At the hearing, the ALJ heard testimony from Plaintiff and a vocational expert.  ECF No. 8-2 at 35-78.  Plaintiff testified as to her work history, explaining that her most recent job as a teacher had involved standing, bending, and carrying about twenty pounds, and that a previous job at the Burlington Coat Factory involved bending, standing, reaching, and lifting about fifty pounds. *Id.* at 38-39.  Plaintiff described how she was laid off from her teaching job when the organization closed, and that she did not look for another job because she began experiencing pain in her neck and shoulders that required treatment.  *Id.* at 39-40.

Plaintiff noted her symptoms and treatment, testifying that she had undergone neck surgery on April 6, 2015, and shortly afterward began attending physical therapy.  *Id.* at 41-42.  Plaintiff discussed her abilities, explaining that she had arthritis and "this nerve thing" that caused her leg to stiffen up and "bounce" to the extent where she "does not rest at night." *Id.* at 43-45.  She stated that she had trouble going to medical appointments because of difficulty driving caused by shaking in her knee and lower back pain.  *Id.* at 42-43, 51-52.  She also stated that her right leg was weak from the waist down, making it difficult for her to get dressed in the morning, and despite therapy, she still had problems washing and drying herself.  *Id.* at 44-46.  Plaintiff testified that despite trying to stay as independent as possible, she was still walking with two canes that were prescribed

by one of her doctors around 2014 or 2015 after her neck surgery. *Id.* at 48-49. Even with these assistive devices, however, she testified that still had difficulty getting out of a chair or the sofa. *Id.* at 48-49.

Plaintiff also described her daily routine to the ALJ, which included kicking her laundry down the stairs and waiting for someone to help her bring it up, or bringing it back up in intervals, so that she could hold the rail with one hand and her cane in the other. *Id.* at 54-55. She described how she needed to work together with her mother to accomplish harder tasks, such as taking out the trash. *Id.* at 56. Plaintiff stated that she goes to a rehabilitative pool twice a week to work on her strength. *Id.* at 70-71. She reiterated that she could sit for about twenty minutes before feeling pain and discomfort to the point where she needed get up and walk around, and that that she had trouble sleeping due to this pain in her legs. *Id.* at 71-72, 74-75.

The ALJ then heard from the vocational expert ("VE"). *Id.* at 75. The ALJ asked the VE a series of hypothetical questions about an individual of the same age, education, and work experience as Plaintiff. *Id.* at 76-78. The ALJ asked the VE if the hypothetical individual with the RFC the ALJ formulated could perform Plaintiff's past relevant jobs. *Id.* at 76. The VE responded that the individual could not perform work as a cashier because it required a "medium" level of exertion, but could perform work as an instructor which required only "light" exertion. *Id.* at 77. The VE noted, however, that if the hypothetical individual were to be off task for more than ten percent of the workday, the individual would have difficulty maintaining employment as an instructor. *Id.* at 78.

### D.  THE ALJ'S DECISION

The ALJ issued her decision on November 29, 2019, finding that Plaintiff was not disabled. ECF No. 8-2 at 8, 19-20. At step one, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since April 6, 2015, the alleged onset date of her disability.  *Id.* at 14.  At step two,
the ALJ found that Plaintiff had the following severe impairments: (1) degenerative disc disease
of the lumbar spine; (2) osteoarthritis of the knees; and (3) obesity.  *Id.*  The ALJ noted that
Plaintiff's degenerative disc disease of the cervical spine did not cause more than minimal
limitation of the claimant's ability to perform basic work activities.  *Id.*  And, given the lack of
evidence of complaints or treatment since an April 2017 MRI, the ALJ found that the disc disease
was not severe.  *Id.*

At step three, the ALJ found that Plaintiff's impairment or combination of impairments did
not meet or medically equal the severity of any of the impairments in the Listings.  *Id.*  Specifically,
the ALJ considered Listing 1.04 (Disorders of the Spine).[3]  ECF No. 8-2 at 14-15.  The ALJ
determined that:

> Although the claimant has a "severe" impairment, it does not meet the criteria of
> any listed impairments described in Appendix 1 of the Regulations.  No treating or
> examining physician has mentioned findings equivalent in severity to the criteria
> of any listed impairment, nor does the evidence show medical findings that are the
> same or equivalent to those of any listed impairment of the Listing of Impairments.
> The medical evidence establishes degenerative disc disease of the lumbar spine, but
> the evidence does not satisfy the criteria of section 1.04.  Specifically, the record is
> devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal
> stenosis with accompanying ineffective ambulation.

*Id.*

The ALJ also found that Plaintiff's obesity did not qualify as a severe impairment because
it is no longer a listed impairment in the regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1,

---

[3]     On April 2, 2021, the SSA updated musculoskeletal listings.  *See Revised Medical Criteria
for Evaluating Musculoskeletal Disorders Final Rules Questions and Answers*, SSA,
https://www.ssa.gov/thirdparty/materials/pdfs/21-489_Musculoskeletal_FAQs.pdf  (last  visited
May 12, 2023).  Listing 1.04 now falls under Listing 1.15.  *See* 1.00 Musculoskeletal Disorders –
Adult,     SSA,     https://www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-
Adult.htm#1_15 (last visited July 27, 2023).  The Court will refer to the prior Listing 1.04
throughout as it was applicable at the time of Plaintiff's application.

but considered Plaintiff's obesity in relation to and in combination with Plaintiff's other impairments.  ECF No. 8-2 at 15.

At step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except frequently climb, crouch, kneel, crawl, and use foot controls.  ECF No. 8-2 at 15.  The ALJ found that although Plaintiff's medically-determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not consistent with the record.  *Id.* at 17-19.  The ALJ determined that:

> [T]he record as a whole, including the overall evidence of record, the medical evidence, the claimant's testimony, the claimant's activities, and other factors described above support some functional limitations.  However, they do not fully support claimant's statements regarding the severity or frequency of her symptoms as more supportive of any greater limitations or restrictions than those included in the residual functional capacity.  Consequently, there is no basis for finding that the claimant had suffered any other symptoms that would further reduce the residual functional capacity.

*Id.* at 19.

At step five, ALJ determined that Plaintiff was not disabled under the Act as Plaintiff could perform past relevant work.  *Id.* at 19-20.  Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's petition on February 6, 2020.  *Id.* at 2-8.

## LEGAL STANDARD

A federal district court has jurisdiction over a challenge to the final decision of the Commissioner.  42 U.S.C. § 405(g).  A reviewing court must affirm the Commissioner's decision if it is based on substantial evidence in the record and the correct application of the relevant legal standards.  *Id.*; *Butler*, 353 F.3d at 999; *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987).

Substantial evidence is "'more than mere scintilla'" and means only "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek v.*

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Ultimately, substantial evidence is a "low bar," *La. Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021), and "requires considerable deference to the decision rendered by the ALJ." *Crosson v. Shalala*, 907 F. Supp. 1, 3 (D.D.C. 1995).  Even so, although there is no requirement that the ALJ refer to every piece of evidence in her decision, the ALJ is "prohibited from ignoring an entire line of evidence that supports a disability finding." *Goodman v. Colvin*, 233 F. Supp. 3d 88, 109 (D.D.C. 2017) (internal quotations and citations omitted).

On review, a court may not reweigh the evidence.  *Butler*, 353 F.3d at 999.  Instead, it is the court's role to "carefully scrutinize the entire record to ensure that the Commissioner, through the ALJ, has both analyzed all of the evidence available and has sufficiently explained his/her reasoning and the weights given to the facts." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009).  Moreover, the court's job is to "consider the grounds actually proffered by the ALJ" rather than to make those determinations for itself.  *See Ward v. Berryhill*, 246 F. Supp. 3d 202, 210 (D.D.C. 2017).

In performing this role, a court must ". . . be mindful of the harmless-error rule. Consequently, even if [the Court] perceive[s] error," it must "affirm the Commission's decision unless the error is prejudicial." *Saunders v. Kijakazi*, 6 F.4th 1, 5 (D.C. Cir. 2021) (internal citation omitted).  A "'[p]laintiff bears the burden of demonstrating that the Commissioner's decision [is] not based on substantial evidence or that incorrect legal standards were applied.'" *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (quoting *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)).

## DISCUSSION

Plaintiff makes two arguments in support of her motion to reverse the ALJ's decision. First, Plaintiff argues that the ALJ failed to find her disabled pursuant to the Listing 1.04(A) under step three.  ECF No. 13-1 at 5-6.  Second, Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC when the ALJ determined that Plaintiff can perform light work.  *Id.* at 6-11.  The Commissioner responds that the ALJ properly considered the Listings and that her decision is based on substantial evidence.  ECF No. 14.

### A.  THE ALJ ERRED IN FAILING TO ARTICULATE SUFFICIENTLY WHY PLAINTIFF FAILED TO MEET LISTING 1.04(A) UNDER STEP THREE.

Listing 1.04 requires a claimant to show that she had a disorder of the spine and that she met an additional criterion contained in paragraphs A, B, or C.  *See* 20 C.F.R. Part 404, Subpart P, App. 1, 1.04.  Paragraph A, at issue here, requires a claimant to show "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory loss or reflex loss and, if there is involvement of the lower back, positive straight-leg raise test (sitting and supine)."  *Id.* § 1.04A.  A claimant bears the burden of demonstrating that all the criteria in the listings are met.  *Zebley*, 493 U.S. at 525.

The criteria for the Listings in step three "are more restrictive than the statutory disability standard," as the plaintiff must establish that her impairments are "severe enough to prevent a person from doing *any* gainful activity."  *Zebley*, 493 U.S. at 532 (quoting 20 C.F.R. § 416.925(a)) (emphasis added).  In evaluating the ALJ's decision here, a "Court is not confined to the ALJ's analysis at step three and instead must consider the reasoning provided by the ALJ in the decision in its entirety."  *Gibson v. Kijakazi*, No. 1:21-CV-660-ZMF, 2022 WL 17172189, at *4 (D.D.C. Nov. 23, 2022) (citing *Al Hulais v. Comm'r. of Soc. Sec. Admin.*, No. 18-cv-118, 2018 WL

6704756, at *6 (D. Md. Dec. 20, 2018).  Although "the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000)).  The ALJ must indicate not only "'what evidence is credited but whether other evidence was rejected,' rather than simply ignored." *Gibson*, 2022 WL 17172189, at *6 (quoting *Brown v. Bowen*, 794 F.2d 703,708 (D.C. Cir. 1986); *Watson v. Berryhill*, No. 1:16-CV-00089, 2018 WL 3434711, at *4 (N.D. Ind. July 17, 2018) (finding that the ALJ's three-sentence conclusory dismissal, which stated only that there was no evidence to establish the factors required at step three, was inadequate because it failed to provide any explanation of why the plaintiff's impairments were not severe enough to qualify him as disabled); *see also Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (finding that the ALJ did not have substantial evidence, in part because he did not use any of the evidence favorable to the plaintiff when evaluating the Listing criteria).

Plaintiff argues that she meets Listing 1.04(A).  ECF No. 13-1 at 5-6.  First, Plaintiff points to medical records that document nerve root compression characterized by a neuroanatomic distribution of pain in her 2014 MRI showing "grade I spondylolisthesis at L3-4 and mild discogenic spondylosis with diffuse posterior bulge and a moderate degree of facet joint arthropathy bilaterally . . . with a mild degree of right recess and right neural foraminal stenosis." *See id.*  Second, she cites to several records which allegedly show a distribution of pain, radiculopathy, weakness, decreased mobility, areflexia, and decreased sensation.  *Id.*  For example, she cites to a March 30, 2017, visit with Dr. Fossett where Plaintiff was diagnosed with lumbar radiculopathy.  *See id.*  Lastly, Plaintiff cites medical records which reflect that her straight leg tests were positive on multiple occasions.  *See id.*

The Commissioner responds that the ALJ's finding was supported by substantial evidence. ECF No. 14 at 10-12.  The Commissioner argues that Plaintiff did not show any evidence of consistent limitation of motion of the spine or motor loss because there was no evidence in the record of atrophy or sensory or reflex loss.  *See* ECF No. 14 at 11-12.  In particular, the Commissioner notes that at "virtually every visit," Plaintiff's gait and station were normal without any assistive devices.  *See id.*  Further, the Commissioner asserts, Plaintiff's three positive straight-leg tests were insufficient to meet Listing 1.04(A) because there was no indication that the tests were performed in both seated and supine position as required by the Listing.  *Id.* at 12.  Moreover, the record includes evidence of other negative straight-leg raising tests.  *Id.*

The Court agrees with Plaintiff.

The ALJ's discussion as to whether Plaintiff met Listing 1.04(A), which is no more than four sentences, is perfunctory at best.  ECF No. 8-2 at 14-15.  Her reasoning is as follows:

> Although the claimant has a "severe" impairment, it does not meet the criteria of any listed impairments described in Appendix 1 of the Regulations.  No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments. The medical evidence establishes degenerative disc disease of the lumbar spine, but the evidence does not satisfy  the criteria of section 1.04.  Specifically, the record is devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation.

*Id.*

Plaintiff, however, cites to conflicting medical records reflecting evidence that allegedly comports with the Listing.  *See* ECF No. 8-7 at 35, 38, 103 (various treatment records noting radiculopathy, weakness, decreased mobility, and decreased sensation); ECF No. 8-8 at 96 (same); ECF No. 8-9 at 17-19, 159-60 (same); *see also* ECF No. 8-7 at 10 (medical record of a 2014 MRI showed a "grade I spondylolisthesis at L3-4 and mild discogenic spondylosis and diffuse posterior

bulge and a moderate degree or facet joint arthropathy . . . ."); ECF No. 8-8 at 262 ("Pt exhibits major difficulty performing supine SLR"); ECF No. 8-9 at 5-6, 9 (positive straight leg tests).  At a minimum, the ALJ was obliged to address Plaintiff's contradictory evidence.  *See Lane-Rauth*, 437 F. Supp. 2d at 67 ("[although] the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position.").  The ALJ erred because she failed to acknowledge and discuss the evidence, or even provide "a breath of explanation."  *Brown*, 794 F.2d at 708 ("The judiciary can scarcely perform its assigned review function, limited though it is, without some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored"); *see also Gibson*, 2022 WL 17172189, at *6-7 (finding that although an ALJ need not spell out every aspect of a Listing, his discussion of the evidence must not be superficial); *Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015) (finding an ALJ's two-sentence explanation inadequate to dismiss plaintiff's claim under the Listings); *Watson*, 2018 WL 3434711, at *4 (N.D. Ind. July 17, 2018) (finding ALJ's three sentences inadequate to dismiss plaintiff's claim under the Listings); *cf. Broyles v. Astrue*, 910 F. Supp. 2d 55, 62 (D.D.C. 2012) (finding an ALJ's analysis sufficient because the ALJ clearly explained how he weighed certain evidence).

The Commissioner does not address the ALJ's failure to consider contrary evidence; rather, the Commissioner provides a litany of post-hoc rationalizations, effectively assuming the role of the ALJ.  ECF No. 14 at 13-14.  The Commissioner's refutation of Plaintiff's argument that she met the Listing grapples with contradictory evidence and is well-supported by citations to the record.  *Id.*  None of this discussion, however, is in the ALJ's decision.  ECF No. 8-2 at 14-15.  Although the record may well reflect that Plaintiff failed to meet her burden, the Court is unable

to discern this from the ALJ's decision.  *See Ward*, 246 F. Supp. 3d at 210 (holding that the court's job is to consider the grounds that the ALJ actually proffered for its decision); *Cooper v. Berryhill*, No. 16-1671 DAR, 2017 WL 4326388, at *5 (D.D.C. Sept. 28, 2017) (prohibiting the Commissioner from offering "post-hoc rationalization[s]" to support the ALJ's actions).

In effect, the ALJ's conclusory analysis at step three effectively "ignored evidence and mischaracterized the record."  *See Watson*, 2018 WL 3434711, at *4.  The ALJ's failure to even "minimally discuss" the contradictory evidence Plaintiff raised, coupled with the absence of citations to the record engaging with the evidence, deprives Plaintiff of any shot at meaningful judicial review.  *Lane-Rauth*, 437 F. Supp. 2d at 67; *Cobb v. Astrue*, 770 F. Supp. 2d 165, 171 (D.D.C. 2011).  As such, the Court remands this case to the Social Security Administration for further administrative proceedings consistent with this Memorandum Opinion.  *See Ademakinwa v. Astrue*, 696 F. Supp. 2d 107, 111 (D.D.C. 2010) (citation omitted) (finding remand appropriate where the court cannot discern "the ALJ's rationale . . . without further findings or clearer explanation for the decision."); *Wells v. Astrue*, No. 02–1357, 2009 WL 2338047, at *7 n.5 (D.D.C. Jul. 30, 2009) ("When the evidence in the administrative record clearly generates an issue as to a particular listing and the ALJ fails to . . . explain clearly the medical evidence of record supporting the conclusion reached[,] a remand can be expected to result.").

## B.  THE ALJ'S RFC DETERMINATION THAT PLAINTIFF CAN PERFORM LIGHT WORK IS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Plaintiff also contends that the ALJ's determination of Plaintiff's RFC was not supported by substantial evidence because the ALJ failed to afford proper weight to the opinions of Plaintiff's treating providers.  *See* ECF No. 13-1 at 6-11; ECF No. 16 at 3-4.  Plaintiff asserts that the ALJ was required to give greater weight to the opinions of Plaintiff's treating providers under this Circuit's treating physician rule.  ECF No. 13-1 at 11 (citing *Butler*, 353 F.3d at 1003); ECF No.

16 at 3-4.  The Commissioner responds that this Circuit no longer adheres to such a rule and that substantial evidence supports the ALJ's determination that Plaintiff can perform light work.  *See* ECF No. 14 at 13 (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017)).

Plaintiff misses the mark.  In formulating a claimant's RFC for claims filed after March 27, 2017, ALJs cannot defer or give specific evidentiary weight to medical opinions from claimants' treating providers.  20 C.F.R. § 404.1520c(a).  Before the SSA issued revised regulations in 2017, courts in this Circuit followed the "treating physician rule" which interpreted prior regulations, 20 C.F.R. § 404.1527(d)(2), to require ALJs to give "controlling weight" to physicians' opinions so long as they were consistent with the record.  *Butler*, 353 F.3d at 1003. Under the revised regulations, 20 C.F.R. §§ 404.1520c and 416.920c, an ALJ shall not give specific evidentiary weight to any medical opinion, "including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c.  Instead, an ALJ must evaluate each medical opinion under a multifactorial test.[4]  *See* 20 CFR § 404.1527(a) (1996) (rescinded by 82 Fed. Reg. 15263 (Mar. 27, 2017)); *see also De Deaux v. Kijakazi*, No. 21-CV-682, 2022 WL 14760678, at *3-4 (D.D.C. Oct. 25, 2022) (applying the revised regulation for a claim filed after March 27, 2017); *Demetria R. v. Kijakazi*, No. 20-cv-3227 (RJL/GMH), 2022 WL 3142376, at *24 (D.D.C.

---

[4]      The revised regulation requires the ALJ to decide how persuasive she finds all medical opinions based on an analysis of five factors: (1) supportability, (2) consistency, (3) the medical source's relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(b)-(c). When evaluating the persuasiveness of a medical opinion, the most important factors for an ALJ to consider are supportability and consistency, and ALJs must explain how these factors were considered.  *Id.* § 404.1520c(b)(2).

June 30, 2022) (same).  Because Plaintiff filed her claim on June 20, 2017, the new regulations

apply to her claim.  ECF No. 8-2 at 11.[5]

> 1. *WEIGHT AFFORDED TO PLAINTIFF'S TREATING PROVIDERS*

As part of her argument that the ALJ erred in formulating her RFC, Plaintiff contends that

the ALJ incorrectly disregarded the opinions of her treating providers.  *See* ECF No. 13-1 at 6-12;

ECF No. 16 at 3-4.  Specifically, Plaintiff argues that the ALJ should have placed greater weight

on the opinions of two of Plaintiff's treating physicians, Dr. Janaki Kalyanam and Dr. Andre

Duerinckx, who noted that Plaintiff had significant limitations.  ECF No. 13-1 at 9-11.

As the Court discussed above, an ALJ cannot accord specific evidentiary weight to the

opinion of a claimant's treating provider.   When evaluating the persuasiveness of a medical

opinion, the most important factors for an ALJ to consider are supportability and consistency—

ALJs *must* explain how those two factors were considered.  *See* 20 C.F.R. § 404.1520c(b)(2).  If a

medical source provides multiple findings or opinions, the ALJ *may* articulate in a single analysis

how she considered the factors for each finding or opinion.  *Id.* § 404.1520c(b)(1); *see also*

*Massicotte v. Comm'r of Soc. Sec.*, No. 20-cv-2923, 2022 WL 2663406, at *5 (M.D. Fla. July 11,

2022) ("[T]he ALJ need not adopt every part of an opinion he or she finds persuasive."); *McClure*

*v. Saul*, No. 20-cv-150, 2021 WL 3856577, at *7 (E.D. Mo. Aug. 30, 2021) (same).  The ALJ is

required to "provid[e] a sufficient basis for this Court to understand his reasoning when viewing

the decision as a whole." *Colter v. Kijakazi*, No. 20-0632 (CKK), 2022 WL 715218, at *11 (D.D.C.

---

[5]      Plaintiff insists that "this Circuit maintains its own 'treating physician rule' for claims filed
after March 27, 2017."  ECF No. 16 at 3.  Plaintiff is wrong.  *See e.g.*, *De Deaux*, 2022 WL
14760678, at *3-4 (applying the revised regulation for a claim filed after March 27, 2017).  The
single case upon which Plaintiff relies to suggest that the treating physician rule still applies in his
Circuit does not apply because that case involves claims filed in March 2015 and October 2016,
well before the SSA propounded the new regulations.  *See Erica R. v. Kijakazi*, No. 20-cv-0635
(JEB/GMH), 2021 WL 4267924, at *3 (D.D.C. Aug. 31, 2021).

Mar. 10, 2022). "In performing the RFC assessment, the ALJ must explain how he considered and resolved any material inconsistencies," not just state that that the opinion was rejected. *See Cobb*, 770 F. Supp. 2d at 171 (holding the ALJ's RFC insufficient where the assessment of opinions contained only broad generalizations rather than analysis and citation to specific facts).

Here, the ALJ adequately articulated her rationale for weighing certain reports more heavily than others.[6]  The ALJ began her analysis by reviewing the opinions of Plaintiff's own medical providers, then reviewed the opinions of the state agency consultants, explaining why she found the opinions of Plaintiff's providers less supported and consistent than the state agency consultants.  ECF No. 8-2 at 17-19; *see* 20 C.F.R. § 404.1520c(b)-(c) (requiring ALJs to articulate only how they considered factors supporting supportability and consistency of opinion evidence). The ALJ did not "broadly generalize" that Plaintiff's providers were not credible, *Cobb*, 770 F. Supp. 2d at 171, but cited to specific reports and facts from the record, comparing findings from objective medical tests with subjective reports.  *See* ECF No. 8-2 at 17-18.  As the Commissioner raises, both treatment notes that Dr. Kalyanam and Dr. Duerinckx provided, which suggested that Plaintiff was significantly limited, were merely notations of Plaintiff's subjective complaints, not objective medical evidence.  *See* ECF No. 14 at 18-19.  Plaintiff's complaints alone are insufficient to satisfy Plaintiff's burden to establish disability.  *See Davis v. Saul*, No. 18-CV-1714 (RMC/GMH), 2019 WL 12251884, at *17 (D.D.C. Nov. 27, 2019), *report and rec. adopted*, No. CV 18-1714 (RMC), 2020 WL 9439346 (D.D.C. Jan. 28, 2020).  In any event, the ALJ's thorough

---

[6]     Even under the old, more stringent treating source regulation upon which Plaintiff bases her argument, courts routinely found that ALJs were permitted to afford less weight when the opinion was contradicted by other objective medical evidence.  *See, e.g.*, *Grant v. Astrue*, 857 F. Supp. 2d 146, 155 (D.D.C. 2012) (finding ALJ's assessment sufficient that a treating physician's opinion was not entitled to controlling weight when the opinion was "contradicted by other evidence in the record" and clinical findings did not support it).

evaluation of the record demonstrates that the ALJ conducted a holistic evaluation of all pertinent medical evidence, and that substantial evidence supports the ALJ's determination.  ECF No. 8-2 at 17-19.

For example, the ALJ noted that, following Plaintiff's complaint of knee pain, x-rays showed mild degenerative disease leading to a diagnosis of osteoarthritis in both knees.  *Id.* at 17. The ALJ ultimately observed, however, that follow-up knee exams showed a normal gait, full range of motion, and 5/5 strength in both knees.  *Id.*  The ALJ also acknowledged Plaintiff's complaints of lumbar pain but found that Plaintiff had tolerated physical therapy well and subsequently reported only 2/10 pain.  *Id.* at 18.  Further, the ALJ evaluated Plaintiff's opinion evidence where she noted that, although Plaintiff reported that she used a cane that one of her other treating physicians prescribed, there was no evidence of any such prescription in the record.  *Id.*

The ALJ provided a similar analysis of the state agency consultants' findings, noting that their opinions should be afforded greater weight because they were "consistent with other objective medical evidence of record and consistent with claimant's alleged activities of daily living."  ECF No. 8-2 at 19.  The ALJ found the state agency consultants' opinions persuasive because they were "rendered by expert medical personnel" and "consistent with other objective medical evidence of record."  *Id.*  The ALJ also concluded that "the evidence received after the state agency consultants rendered their opinions does not show any significant decline in [Plaintiff's] condition."  *Id.*  The ALJ briefly noted that the state agency consultants' limitation to occasional balancing was less persuasive because "the record does not include any evidence that the claimant requires a cane to ambulate," observing that Plaintiff's treatment notes consistently showed normal gait, strength, reflexes, and range of motion.  *Id.*

The Court does not find error in how the ALJ weighed the opinion evidence within the record.  She considered the reports of Plaintiff's providers and methodically explained why she viewed certain other evidence more credible than the opinions of Plaintiff's providers.  ECF No. 16 at 4; *see Caitlin O. v. Kijakazi*, No. 17-CV-1939, 2022 WL 17370231, at *28 (D.D.C. Oct. 27, 2022) (holding that the ALJ's analysis was sufficient when he did not merely provide a "bare statement" but instead acknowledged the contradictory evidence in the record and explained why he viewed certain evidence as more credible); *cf. McGraw v. Berryhill*, No. 17-cv-1011, 2019 WL 4222703, at *4 (D.D.C. Sept. 5, 2019) ("An ALJ is generally not expected to provide more detail than citing . . . the contradictory evidence in his report.").  The ALJ provided citations to the record, pointing to specific tests, such as range of motion and strength tests, contrasting those with Plaintiff's subjective reports.  ECF No. 8-2 at 17-18.  The contrast the ALJ drew in her analysis underscores her finding that Plaintiff's subjective complaints were not "supportable" and "consistent" with the entire record.  *Id.*; 20 C.F.R. § 404.1520c(b)-(c); *see also Caitlin O.*, 2022 WL 17370231, at *28 (finding no error in an ALJ's assessment when providers' reports were inconsistent with objective medical findings).  Accordingly, substantial evidence in the record supports the ALJ's decision to give less weight to Plaintiff's treating providers.

### 2.  PLAINTIFF'S RFC DETERMINATION

Plaintiff further claims that the ALJ incorrectly formulated her RFC in discounting Plaintiff's subjective complaints and finding that Plaintiff can perform light work.  ECF No. 13 at 6-11.  The Commissioner responds that substantial evidence supports the ALJ's RFC determination.  ECF No. 15 at 17-18.

The RFC assessment is a "function-by-function inquiry based on all the relevant evidence of a claimant's ability to do work and must contain a narrative discussion identifying the evidence

that supports each conclusion." *Butler*, 353 F.3d at 1000.  In determining the RFC, an ALJ "must

build a logical bridge from the evidence to his conclusion." *Banks v. Astrue*, 537 F. Supp. 2d 75,

84 (D.D.C.) (internal quotation and citation omitted).  Evaluating a claimant's RFC as to their

subjective complaints involves a two-step process.  First, the ALJ must determine whether there

is an underlying physical or mental impairment that can be shown by clinical or laboratory

diagnostic techniques that could reasonably be expected to cause the claimant's symptoms.  20

C.F.R. § 404.1529.  If so, then the ALJ must evaluate the intensity, persistence, and limiting effects

of the claimant's symptoms to determine the extent to which they limit the claimant's functional

abilities.  *Id*.  In fashioning an RFC, "the ALJ must explain how he considered and resolved any

material inconsistencies or ambiguities evident in the record, as well as the reasons for rejecting

medical opinions in conflict with the ultimate RFC determination." *Butler*, 353 F.3d at 1000

(internal quotation marks omitted).

Here, under the first step, the ALJ found that Plaintiff's impairments could reasonably be

expected to cause her alleged symptoms.  ECF No. 8-2 at 17.  At the second step, however, the

ALJ found that the intensity, persistence, and limiting effects of Plaintiff's symptoms were

inconsistent with the record evidence and therefore did not support Plaintiff's claimed functional

limitations.  *Id.*  The ALJ considered the longitudinal treatment record, listing Plaintiff's subjective

complaints, as well as information from her treatment notes regarding her cervical discectomy,

knee pain, knee degenerative disease, knee osteoarthritis, lumbar spinal stenosis, obesity, and

neurological symptoms.  ECF No. 8-2 at 15-18.  The ALJ found that none of these complaints

about the intensity, persistence, and limiting effects of Plaintiff's symptoms were consistent with

the objective medical record.  ECF No. 8-2 at 18.  The ALJ expressly set forth the inconsistencies

in the record, including that: (1) Plaintiff stopped working several years prior to her alleged onset

date; (2) Plaintiff testified that she is the primary caregiver for her legally blind mother, for whom Plaintiff must grocery shop, drive and do laundry; and (3) Plaintiff testified that that Dr. Rankin prescribed a cane and brace, but there was no record of such a prescription in his treatment notes. *Id.* Based on these inconsistencies, the ALJ found that the objective evidence of the intensity, persistence, and limiting effects of Plaintiff's symptoms was not consistent with her subjective complaints. *Id.* at 18.

Plaintiff argues that the ALJ failed to weigh the evidence properly. ECF No. 13-1 at 6-11. Plaintiff is incorrect. The ALJ appropriately provided a "detailed and precise" analysis of Plaintiff's medical history, symptoms, and how the record evidence related to the intensity, persistence, and limiting effects of her alleged symptoms. *See Banks*, 537 F. Supp. 2d at 84-85 (holding that a narrative discussion of a plaintiff's function limitations is required, but that the ALJ need not engage in a function-by-function analysis for the RFC determination). The ALJ went beyond mere recitation of the facts and conclusory generalizations. *See Cobb*, 770 F. Supp. 2d at 171*; see also Lane-Rauth*, 437 F. Supp. 2d at 67 (remanding where ALJ merely listed evidence without explaining how it related to his conclusion). Rather, the ALJ cited to particular portions of the record to support her conclusions. ECF No. 8-2 at 15-19. This included a three-page narrative discussion of Plaintiff's testimony, opinion evidence from the hearing, and other medical evidence. *See, e.g.*, *id.* at 15-17 (recounting Plaintiff's hearing testimony regarding her symptoms and activities of daily living); *see also Colter*, 2022 WL 715218, at *9 (approving of an ALJ's decision where the ALJ included a narrative discussion of the record and explained how he reached his conclusions from that evidence). A review of the record confirms that the ALJ's decision is based on substantial evidence. *See, e.g.*, ECF No. 8-2 at 18 (citing to particular medical records and explaining why she found inconsistencies in the record, for example, "claimant testified that

she was prescribed a cane and brace . . . . However, . . . there is no indication that she required the use of a cane or brace to ambulate."); *id.* at 17 (describing Plaintiff's complaints of knee pain and contrasting this with medical reports documenting that Plaintiff had full range of motion and 5/5 strength).  Through the use of concrete examples from the record to illustrate her findings, the ALJ "built a logical bridge" between the evidence and her conclusions.  *See Cobb*, 770 F. Supp. 2d at 171.

Accordingly, the ALJ's decision need not be disturbed.  *Lane-Rauth*, 437 F. Supp. 2d at 64.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reversal, is **GRANTED IN PART** and **DENIED IN PART**.  Defendant's Motion for Judgment of Affirmance is **GRANTED IN PART** and **DENIED IN PART**.  With respect to the single issue outlined in Part A., this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this Opinion.

**SO ORDERED**.

Date: July 28, 2023                                    _____
                                                       MOXILA A. UPADHYAYA
                                                       United States Magistrate Judge